NOT DESIGNATED FOR PUBLICATION

No. 123,208

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ZACHARY XAVIER GREY,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed December 3, 2021. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ISHERWOOD, JJ.

PER CURIAM:  A jury convicted Zachary Xavier Grey of aggravated domestic battery and criminal deprivation of property. Although the district court sentenced Grey to 11 months' imprisonment, he was granted probation for a period of 24 months. The sole issue presented on appeal is whether the district court erred in failing to give the jury a unanimity instruction relating to the aggravated domestic battery charge. Based on our review of the record, we do not find that the district court erred under the circumstances presented in this case. Thus, we affirm Grey's convictions.

1

On the afternoon of May 11, 2019, Grey and his wife met in their apartment to discuss marital issues. At some point prior to the meeting, Grey's wife had moved out of the apartment and moved in with her parents. Although the details—and the exact timing—of what occurred are disputed by the parties, it is undisputed that there was a physical altercation in the apartment. As a result, Grey was arrested and charged by the State with aggravated domestic battery, criminal restraint, and deprivation of property.

The district court commenced a two-day jury trial on February 10-11, 2020. Both Grey and his wife testified. However, the wife was an uncooperative witness and had to be subpoenaed by the State to testify at trial. In contrast to the statements she had previously made regarding the altercation, Grey's wife testified at trial that he slapped her and that the altercation involved "[j]ust things that happen in an average fight."

According to Zachary, he simply wanted to talk; but his wife touched him and he pushed her away. He also admitted to slapping her in the face. When his wife attempted to leave the apartment with the couple's cat, Grey prevented her from leaving—using a chair to block the front door. He testified that "I took a chair and placed it against the door—to the front door and told her that she wasn't going to leave with the cat." However, he suggested that his wife could have left the apartment through a sliding glass door.

Grey admitted that he grabbed his wife's cell phone from her hand to prevent her from making a call. He also admitted that he and his wife began "wrestling" over the phone. At some point, the altercation moved to the bedroom. Grey's wife reported to the police that he had attempted to strangle her as he had her pinned to the bed and then on the bedroom floor. She also reported that she fled to the living room, that Grey pushed her onto the couch, and that he choked her with both hands until she started seeing black

spots. Nevertheless, by the time she appeared at trial, Grey's wife testified that he had "possibly" applied pressure to her neck. Although Grey denied strangling his wife, he admitted at trial to placing his hands around her neck.

Officer William Cole Howard of the Shawnee Police Department also testified at trial. In particular, Officer Howard testified that he was dispatched to investigate a domestic disturbance following a 911 call made by Grey's wife shortly after the altercation. He confirmed that she reported that Grey had strangled her—first on the bed, then on the bedroom floor, and later on the living room couch. He also testified that she reported not being able to breathe, seeing black spots, and feeling like she was going to die. He further testified that she reported that after she was able to flee from the apartment, she went to her parents' house and called the police.

In addition, Officer Howard testified that he observed injuries on Maria's neck and that she had a raspy voice. Based on his experience, the officer testified that these signs are consistent with victims reporting strangulation. He also testified that he took photographs to document Maria's injuries and they were admitted into evidence at trial. Finally, Officer Howard testified that he subsequently interviewed Grey and he admitted to grabbing and squeezing his wife's neck with his hands during the altercation.

Furthermore, a forensic nurse who cared for Grey's wife at Advent Health Shawnee Mission on the evening of the altercation. also testified at trial. She testified that Grey's wife told her that Grey had strangled her and described the strength of his hands on her neck as an "eight" on "a one-to-ten scale." The nurse also testified that Grey's wife reported that she "'couldn't breathe and . . . thought [she] was going to die.'" Likewise, the nurse testified that, upon performing a physical examination of Grey's wife, she observed swelling, redness, bruising, and scratch marks on her neck that were consistent with a patient reporting strangulation.

3

After deliberation, the jury convicted Grey of aggravated domestic battery and criminal deprivation of property. Although the district court sentenced Grey to an underlying prison term of 11 months, it granted his request to be placed on probation. Thereafter, Grey timely appealed his convictions.

ANALYSIS

On appeal, Grey contends that the district court erred by not giving a "unanimity instruction" to the jury. Specifically, Grey argues that a unanimity instruction should have been given because there is evidence in the record to suggest that he choked his wife on more than one occasion during the altercation. In response, the State argues that a unanimity instruction was neither legally nor factually appropriate. Moreover, the State argues that even if a unanimity instruction would have been legally and factually appropriate, the jury would not have reached a different verdict based on the evidence had the alleged instruction error not occurred.

K.S.A. 2020 Supp. 22-3414(3) provides that "[n]o party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." Here, the parties agree that Grey did not request that the district court give a unanimity instruction at trial. Accordingly, the clearly erroneous standard applies in this case.

Under a clearly erroneous standard of review, we are not to reverse a district court unless (1) we find that an error occurred; and (2) we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015). Furthermore, the party claiming a clear error—in this case Grey—has the burden to demonstrate the necessary prejudice. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). Based on our review of the

4

record in light of these standards, we do not find the district court's failure to give a unanimity instruction in this case to be clearly erroneous.

We first determine whether any error occurred by determining whether the instruction was factually and legally appropriate. *State v. Sisson*, 302 Kan. 123, 129, 351 P.3d 1235 (2015). An instruction is factually appropriate when sufficient evidence supports a basis for the giving of an instruction. An instruction is legally appropriate when it fairly and correctly states the applicable law. In making these determinations, our review is unlimited. *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

"When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime. . . . To ensure unanimity in such cases, the trial court must give the jury a unanimity instruction, or the State must elect the particular act it relies on for conviction. [Citations omitted.]" *State v. King*, 297 Kan. 955, 977-78, 305 P.3d 641 (2013). "Whether a case presents a multiple acts issue is a question of law over which this court has unlimited review." *King*, 297 Kan. at 981. "If the incidents in question are not legally or factually separate, there are not multiple acts." *King*, 297 Kan. at 980.

Four factors assist us in analyzing whether the incidents of strangulation in this case were sufficiently separate and distinct: "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" *King*, 297 Kan. at 981 (quoting *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 [2006]). Here, it is undisputed that the incidents of strangulation occurred during the same altercation and in the same apartment.

Grey argues that each strangulation should have been considered a separate act because they occurred in various locations within the couple's apartment. In addition, Grey contends that each strangulation was "motivated by a fresh impulse" as the altercation progressed. However, based on our review of the record, we find that a reasonable person could find that the aggravated domestic battery charge arose out of one ongoing incident with no intervening events. Likewise, it is—at best—conjecture to suggest that there was "a fresh impulse" to motivate Grey's conduct as his victim attempted to flee from his attack.

Although the altercation progressed from room to room in the couple's apartment, it ended only after Grey's wife was finally able to flee from the apartment. Further, the evidence in the record shows that the entire altercation arose from allegations of marital infidelity and resulted in a continuous struggle over the wife's phone. In this regard, both Grey and his wife testified regarding his repeated attempts to gain access to her phone. In addition, both Grey and Officer Howard testified that the altercation ended once Grey's wife successfully regained access to her phone.

As a result, we conclude that the strangulations were not separate and distinct acts but occurred contemporaneously as part of a singular altercation that started as an argument and proceeded to a physical attack. In addition, Grey's defense was that he never strangled his wife, notwithstanding the physical evidence and his admission that he did place his hands around her neck. Consequently, based on our review of the record on appeal, we conclude that a unanimity instruction was neither factually nor legally appropriate under the circumstances presented.

Additionally, even if we had concluded that a unanimity instruction was factually and legally appropriate, we are not firmly convinced that the jury would have reached a different verdict had the alleged instruction error not occurred. The record contains overwhelming evidence that Grey strangled his wife. This evidence includes the

statements made by Grey's wife to law enforcement and to the forensic nurse shortly after the altercation in the apartment. It also includes the results of the physical examination performed in the emergency room and Grey's own testimony. Significantly, when asked at trial if he had placed his hands around his wife's neck, Grey responded, "'Yes, I think I did.'"

In summary, we find that Grey did not request a unanimity instruction and that the district court did not err in failing to give one to the jury. Likewise, we find that the giving of a unanimity instruction under the circumstances presented in this case was neither factually nor legally appropriate. Furthermore, even if the giving of such an instruction had been factually and legally appropriate, we are not firmly convinced that the jury would have reached a different verdict had a unanimity instruction been given. Consequently, finding no error—much less clear error—we affirm Grey's convictions.

Affirmed.